UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CHARLES WAUGH,

          Plaintiff,

-vs-                                             Case No.  5:06-cv-89-Oc-10GRJ

GREENBLADES OF CENTRAL FLORIDA,
INC., a Florida corporation, JOSEPH T.
ROBBINS,

          Defendants.
_____

# **O R D E R**

This case concerning the executive exemption to the overtime provisions of the Fair Labor Standards Act ("FLSA") is before the Court for consideration of the Defendants' Motion for Partial Summary Judgment (Doc. 19), to which the Plaintiff has responded (Doc. 26). The motion is ripe for review and is due to be denied.

## **Background and Facts**

The pertinent facts in this case, viewed in the light most favorable to the Plaintiff, are as follows. From approximately September 2004 until September 23, 2005, the Plaintiff was employed by Defendant Greenblades of Central Florida, Inc. ("Greenblades"), a landscaping and irrigation company with its offices in Lake County, Florida. Greenblades hired the Plaintiff as a "project manager" and informed him that he would be a "working project manager." During his employment, the Plaintiff received a salary of $1,134.62 per week - an annual compensation of approximately $59,000.00.

The Plaintiff worked exclusively at a large planned residential community project located in Brevard County, Florida known as Heritage Isle. Greenblades acted as a landscaping and irrigation subcontractor on that project and, in that role, Greenblades contracted with the general contractor, Lennar Homes. The Plaintiff was the only project manager employed by Greenblades at the Heritage Isle project and, as such, was the most senior Greenblades employee on site. The Plaintiff directed the work of the approximately fifteen employees that constituted an irrigation crew, a grading crew, and a landscaping crew.

As the project manager on site, the Plaintiff had frequent contact with Greenblades' customers. For example, on a regular basis, Lennar Homes would provide the Plaintiff with work schedules for Greenblades, and the Plaintiff would relay that information to the Greenblades crews. The various crews, which were each led by a supervisor or foreperson, were experienced and self-sufficient and performed their assigned task without additional direction. The Plaintiff would also inspect (visually and by taking measurements) the work performed by the irrigation, grading and landscaping crews. In addition, on an on-going basis, the Plaintiff would determine what materials Greenblades needed to complete its work at the Heritage Isle project. Prior to placing an order for materials, the Plaintiff contacted Greenblades' corporate office for approval and received a purchase order number. Further, every Wednesday morning, the Plaintiff gathered and reviewed for accuracy the time sheets from the Greenblades employees working on the Heritage Isle project. The Plaintiff then transmitted those time sheets to Greenblades' corporate office

with a list of the work that the Heritage Isle based crews had completed during the preceding week and receipts from the delivery of materials.

However, the Plaintiff spent the vast majority of his time performing "hands-on" irrigation work that did not fall within the crews' expertise. Specifically, the Plaintiff spent most of his time installing irrigation decoders on the irrigation valves, setting up wire paths, performing service work orders, and performing on-site maintenance and repair of Greenblades' equipment. Further, the Plaintiff never interviewed, selected, hired, or trained any employees or potential employees for Greenblades; never set or adjusted employees' rates of pay; had no authority to hire or fire employees; had no involvement in the hiring or firing process; and did not discipline employees. However, regarding an opening on one of the work crews, the Plaintiff forwarded to Greenblades' corporate offices the name of a potential employee given to him by one of the members of Greenblades' Heritage Isle crews. Greenblades hired that person to work at the Heritage Isle project.

Although the Plaintiff had regular contact with Greenblades' customers, he had no authority to increase or decrease the price or scope of the work performed by Greenblades. Nor did the Plaintiff prepare or review any profit and loss statement or any similar document for Greenblades. In addition, the Plaintiff was not entitled to receive any bonus or performance incentive compensation from Greenblades.

In September 2005, the Plaintiff approached Greenblades to request a raise for himself and his crews. That request was denied and the Plaintiff, together with all of Greenblades' Heritage Isle employees, resigned.

On March 9, 2006, the Plaintiff filed his Complaint seeking to recover unpaid wages for his last week of work (Count I) and unpaid overtime compensation (Count II). The Defendants have moved for summary judgment as to Count II, seeking to have the Court enter judgment in their favor on the grounds that the Plaintiff is an executive exempt from the overtime provisions of the FLSA.

**Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

Moreover, conclusory allegations and unwarranted deductions of fact are not accepted as true. See Eidson v. Arenas, 837 F. Supp. 1158, 1160 (M.D. Fla. 1993).

## Discussion

The sole issue before the Court is whether the Plaintiff is exempt as an executive from the overtime compensation provisions of the FLSA. In general, the FLSA mandates that employees receive one and one-half times their regular rate of pay for all hours worked in excess of forty per week. See 29 U.S.C. § 207(a)(1). However, an exemption is provided for "any employee employed in a bona fide executive . . . capacity" who receives payment on a salary basis. 29 U.S.C. § 213(a)(1). Specifically, federal regulations define an "employee employed in a bona fide executive capacity" as an employee:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.1. The employer has the burden of establishing that it is entitled to the exemption, which the Court must construe narrowly. See Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1254 (11th Cir. 2001); Avery v. City of Talladega, 24 F.3d 1337, 1340 (11th Cir. 1994).

### *1. Salary*

It is undisputed that during his employment with Greenblades the Plaintiff received a salary of $1,134.62 per week. Thus, the first prong of the exemption analysis is satisfied in favor of Greenblades.

### *2. Primary Duty*

A central issue before the Court concerns the second prong of the exemption analysis: whether the Plaintiff's "primary duty [was] management." 29 C.F.R. § 541.1. The regulations define "management" to include:

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. In addition, the regulations define "primary duty" as:

> To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary

>and the wages paid to other employees for the kind of nonexempt work performed by the employee.
>
>(b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

29 C.F.R. § 541.700.

>The regulations also state that:
>
>Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met. Whether an employee meets the requirements of § 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700. Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.

29 C.F.R. § 541.106(a).  Particularly relevant here, the regulations state, as an example, that: "an employee whose primary duty is to work as an electrician is not an exempt executive even if the employee also directs the work of other employees on the job site, orders parts and materials for the job, and handles requests from the prime contractor."

29 C.F.R. § 541.106(c).

Here, the Plaintiff has presented evidence that his primary responsibility was hands-on irrigation work, and that such work constituted 75% of his time. Nonetheless, the Defendants contend that although the Plaintiff may have spent that percentage of his time performing non-exempt work, the managerial nature of his employment results in his exempt status. The Defendants point to the fact that the Plaintiff directed and inspected the work of employees, ordered parts and materials for the project, gathered and reviewed time sheets, and interacted regularly with the customer. Moreover, the Defendants point to the lack of supervision over the Plaintiff as well as a salary that exceeded that of other project managers at Greenblades.

In support, the Defendants cite to Posely v. Eckerd Corp., 433 F. Supp. 2d 1287 (S.D. Fla. 2006), in which the court granted summary judgment in favor of the employer in an action brought by retail store managers who claimed that 80% of the work they performed was non-exempt. In Posely, the Court followed "the overwhelming and well-reasoned precedent holding that retail store managers who are charged with maintaining the proper functioning of their stores are exempt employees under the FLSA." Id. at 1303. However, this case does not involve retail store managers and, thus, the factual and legal analysis underpinning Posely is not wholly applicable here. Specifically, in a retail environment, even though a manager may be spending 80% of her time performing non-exempt tasks that manager is able to perform simultaneously managerial tasks, such as supervision and direction. Id. at 1302 (citing Jones v. Virginia Oil Co., 69 Fed. Appx. 633 (4th Cir. 2003)). The simultaneous performance of managerial tasks is not at issue here.

8

Further, unlike the managers in Posely, the Plaintiff does not "retain a significant amount of control over [project] personnel, both in terms of hiring and supervising their activities." Posely, 433 F. Supp. 2d at 1303. Indeed, Greenblades did not permit the Plaintiff to engage in activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures. See 29 C.F.R. § 541.102. Accordingly, viewing the evidence in the light most favorable to the Plaintiff, the Court cannot say as a matter of law that the Plaintiff's primary duties were managerial.

### 3.  Direction of Two or More Employees

The evidence before the Court establishes that during his employment with Greenblades the Plaintiff directed the work of approximately fifteen employees. Thus, for the purposes of this motion, the Court finds that the third prong of the exemption analysis is satisfied.

### 4.  Recommendations of Employee Status

The Court must also consider whether the Plaintiff was an employee: "Who has the authority to hire or fire other employees or whose suggestions and recommendations as

to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.1.  It is undisputed that the Plaintiff did not have the authority to hire or fire employees, so the question before the Court is whether the Plaintiff's  recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were given "particular weight." The regulations provide some guidance to the determination of whether an employees' recommendations are given "particular weight":

> To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

29 C.F.R. § 541.105.

Here, the Plaintiff has presented evidence that his regular job duties did not include making suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees.  Further, the only evidence relied upon by the Defendants to show "particular weight" is the single instance when the Plaintiff passed along to Greenblades' corporate office the name of a potential employee to fill an opening on one of the Heritage Isle crews. Other than the hire of that single employee, the

Defendants rely only upon the observation that: "as a practical matter, [the Plaintiff's] job certainly entailed some responsibility for evaluating and, if necessary, recommending the termination of employees under his supervision, as he was the highest ranking supervisor with the opportunity to observe the performance of the [Heritage Isle] crew members and foremen."  Doc. 19 at 7.  While the Defendants' contention is reasonable, the Plaintiff testified that he had no involvement in the hiring or firing of any employee.  Due to the lack of evidence and in light of the burden that rests upon the Defendants to establish the applicability of this exemption, the Court cannot say as a matter of law that Greenblades gave particular weight to the Plaintiff's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees.

## Conclusion

Accordingly, upon due consideration, it is ordered that the Defendants' Motion for Partial Summary Judgment (Doc. 19) is DENIED.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 12th day of July, 2007.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record